(July 21, 1977)

■ DOLPH'S CLOTHIERS, INC., et al. v CITY OF NEW YORK et al.—Motion and cross motion for resettlement granted only to the extent of recalling the original memorandum decision of this court (57 AD2d 757) and resettling the order of this court entered on May 12, 1977. Resettled order signed and filed.—Interlocutory judgment, Supreme Court, New York County, entered

September 17, 1976, apportioning liability and damages 51% against the defendant city and 49% against defendant Empire, insofar as appealed from, reversed, on the law, and the case remanded for a new trial as to Empire's liability, and, if necessary, a further trial as to an apportionment of damages between the city and Empire, with $60 costs and disbursements to abide the event. Appeal from order, Supreme Court, New York County, entered September 9, 1976, denying defendant Empire's motion to set aside the verdict, dismissed as academic, without costs and without disbursements. This action was brought by the owners of a building and commercial tenants for water damages sustained as a result of a water main break on February 15, 1972. After the break, Empire's underground duct was found lying upon the city's 48-inch water main. The duct had been installed in 1887 while the city's water main had been laid in 1902. In 1917, the city's main was raised in connection with the construction of a subway system. As was noted above, the city's main burst in 1972. At trial, Empire disclaimed any liability on the principal ground that the city had exclusive control over the construction in 1917. It was Empire's contention that, if the city raised the main without maintaining proper clearance, it should be fully liable for the 1972 break. Empire also averred that while it had an opportunity to inspect the site in 1917, it never did so. The city contended that Empire's personnel were present at the work site in 1917 and they may well have approved the elevation of the main. Hence, it was the city's position that, by approving the construction, Empire may also have been negligent in causing the break. The plaintiffs contended that both defendants had an affirmative duty to ensure that the water main was properly raised. The jury found that the city was liable for 51% of the damages and Empire liable for 49% thereof. The city did not adduce in evidence the 1887 permit pursuant to which the subject ducts were laid. Instead, the city submitted post-1904 permits that covered other ducts. Those post-1904 permits contained a provision, *inter alia,* that Empire was required to maintain a 12-inch clearance if the city laid new mains. The lower court erroneously admitted the post-1904 permits into evidence since it did not necessarily follow nor could it logically be inferred that the same provision was present in the 1887 permit. In line with this error, the lower court incorrectly charged that it was Empire's responsibility to maintain a six-inch clearance between its duct and the city's main. The issues as to whether Empire was required to maintain a clearance, and if so, the space of the clearance, were factual matters that should have been left for the jury. By reason of sections 22 and 23 of the Rapid Transit Law as well as the provisions in the contract covering the 1917 construction, the jury could find that the city had a primary duty to keep a safe clearance between the main and the duct. Consonant with such finding, the jury could also determine that Empire, by reason of the extensive construction performed in 1917, had a common-law duty to inspect the site for obvious errors in the completion of the work. In this case, the jury should be permitted to find that Empire was jointly negligent in not assigning an inspector to the site to ascertain whether the main and duct were touching or were in an unsafe proximity of each other. It is unclear from the record whether Empire had any personnel present at the site in 1917. Plaintiffs' Exhibit No. 14 is a 1918 record of Empire that was signed by an inspector and an engineer of that defendant. The aforementioned exhibit contains a cryptic notation that "old subway maintained". Because of the ambiguity of this exhibit, a factual question was presented as to whether Empire's employees prepared the record after they had personally inspected the 1917 improvement or whether they had

ministerially prepared it after receiving hearsay information from the city's personnel. If the trier of fact finds that the former possibility actually occurred, then Empire could properly be held jointly responsible for approving the city's defective work. For the errors in the evidence and in the charge, a new trial should be held to resolve the liability issue with regard to Empire. If Empire is found liable, a further trial should be held to apportion damages between the city and empire. Concur—Murphy, P. J., Lane and Lynch, JJ.; Capozzoli, J., dissents in part in the following memorandum: I concur with the reasoning and conclusion reached by the majority except that, instead of remanding for a new trial, I would dismiss the complaint against Empire City Subway Co. Ltd.